RESERVE LOAN LIFE INSURANCE COMPANY v. DULIN, RECEIVER.

[No. 9,733. Filed February 13, 1919.]

1. APPEAL.—*Questions Reviewable.—Grounds for New Trial.*— Causes assigned as grounds for new trial which are not authorized by statute will not be considered on appeal. p. 366.

2. PAYMENT.—*Fraud.—Acceptance of Worthless Certificate of Deposit.*—Where a trust company was hopelessly insolvent, and its officers, with knowledge of such fact, issued a certificate of deposit to an insurance company in payment of interest on a mortgage on which the trust company was liable as an indorser, and the insurance company knew nothing of the trust company's financial condition, the issuance of the certificate of deposit was fraudulent, and its acceptance did not constitute payment. p. 372.

3. PAYMENT.—*Mutual Mistake.—Acceptance of Worthless Certificate of Deposit.*—If the officers of a trust company did not know of its insolvency, and issued a certificate of deposit to an insurance company, which accepted it with no knowledge of the insolvency, there was a mutual mistake of fact, and the acceptance of the certificate did not constitute payment. p. 373.

4. PAYMENT.—*Acceptance of Certificate of Deposit.—Burden of Proof.*—In an action to foreclose a mortgage, where defendant trust company contended that its certificate of deposit issued to an insurance company was accepted as payment, the trust company had the burden of proving that there was an agreement to so accept the certificate. p. 373.

5. PAYMENT.—*Pre-existing Debt.—Acceptance of Bill of Exchange.*—A bill of exchange given on account of a pre-existing debt is not payment thereof in the absence of an agreement to that effect. p. 373.

6. PAYMENT.—*Acceptance of Certificate of Deposit.—Presumption.—Rebuttal.*—If the acceptance of a certificate of deposit by a creditor raises a presumption of payment, the presumption is rebuttable. p. 374.

7. PAYMENT.—*Acceptance of Certificate of Deposit.—Presumption of Payment.—Rebuttal.—Evidence.*—That its certificate of deposit was sent by a trust company as a remittance, that on the same day it was received it was deposited for collection by the payee, and that acceptance as absolute payment would surrender a debt secured by a mortgage lien on real estate, are sufficient facts to rebut any presumption that the certificate was payment, except upon the condition that it would be honored upon presentment. p. 374.

8. SUBROGATION.—*Mortgage Foreclosure.—Indorser's Right to Subrogation.*—Where a trust company indorsed a mortgage note and advanced money for interest, it was entitled on foreclosure of the mortgage to subrogation only to the extent necessary to reimburse it for money actually paid, but not for its worthless certificate of deposit issued in payment of interest. p. 374.

9. SUBROGATION.—*Right to Remedy.*—The right of subrogation is a doctrine of equity jurisprudence, and is founded on principles of natural justice. p. 375.

10. APPEAL.—*Review.—Change of Theory.*—In an action to foreclose a mortgage, where defendant was made a party on the ground of subrogation, it cannot change its theory on appeal. p. 375.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Action by the Reserve Loan Life Insurance Com-

pany against Horace G. Brown and another, in which John L. .Dulin, receiver of the Hamilton Trust Company, was admitted on his petition as a party defendant. From a judgment for the receiver, the plaintiff . appeals. *Reversed.*

*Guilford A. Deitch, Frank G. West* and *Gentry & Campbell,* for appellant.

*Shirts & Fertig,* for appellee.

NICHOLS, J.—The appellant filed suit in the Hamilton Circuit Court against Horace G. Brown and Nell Brown to foreclose a certain real estate mortgage in the sum of $3,500, made to the Hamilton Trust Company, and assigned to appellant, and at the same time filed another separate suit against the same defendants, to foreclose another certain mortgage in the sum of $3,600, executed by said defendants to said Hamilton Trust Company, and assigned to appellant. The appellee filed his petition in each of said causes to be admitted as a party defendant, averring that the appellant had forwarded two coupon notes, one for $105 and one for $108, both due January 18, 1915, to the Hamilton Trust Company for collection; that the said Brown, upon demand and presentation of said coupon notes, failed and refused to pay the same, whereupon the Hamilton Trust Company, at his request, and as it was obligated to do by reason of its indorsement of said notes, took up said interest notes and placed the amount thereof to the credit of appellant, issued the appellant its certificate of deposit, and charged the amount thereof to said Brown as a loan to him on the security of said mortgages, whereby, as averred by appellee, said trust company became indebted to appellant for the amount so deposited upon

said certificate, and became subrogated *pro tanto* to the lien of said mortgagee as secured for the repayment of the sum so advanced. The petition was granted, and the appellee was made a party in each suit. Afterward the suits were by agreement consolidated, and, after issues, there was a trial and judgment for appellee. From this judgment, after motion for a new trial was filed and overruled, this appeal is prosecuted.

The errors relied upon for reversal are: (1) The court erred in its conclusions of law on the findings. (2) The court erred in overruling the motion for a new trial. Two of the causes for a new trial are: (1) The decision of the court is not sustained by sufficient evidence. (2) The decision of the court is contrary to law. Other causes assigned are not authorized by the statute, hence are not considered. *Major* v. *Miller* (1905), 165 Ind. 275, 75 N. E. 159.

By request of appellant, the court made and filed special findings of facts, together with conclusions of law, which special findings were numbered from 1 to 20 inclusive, and are as follows: (1) That on January 1, 1911, Horace G. Brown executed to Hamilton Trust Company a principal note for $3,600, due in five years, with interest coupon attached for $108 each, maturing on the 18th day of January and the 18th day of July of each year, all of which were secured by mortgage of even date. (2) That on January 18, 1912, said Brown executed to Hamilton Trust Company a principal note for $3,500, due in five years, with interest coupons each for $105, maturing on the 18th day of January and on the 18th day of July in each of said five years, all of which were secured by

mortgage of even date. (3) The Hamilton Trust Company was a corporation organized under the laws of this state for the incorporation of loan and safe deposit companies, and had its place of business in Noblesville, Indiana; the Reserve Loan Life Insurance Company is an insurance corporation, with offices in Indianapolis, Indiana, and in the regular course of its business invested its funds in mortgage loans. (4) Said trust company in the regular course of its business made many mortgage loans, and from time to time sold and indorsed the same to said insurance company. (5) On January 19, 1911, said trust company sold and indorsed to said insurance company said mortgage for $3,600, mentioned in finding No. 1, and on January 20, 1912, in like manner sold and indorsed to said insurance company the mortgage and mortgage notes mentioned in finding No. 2. (6) That said interest coupons maturing in July, 1914, preceding their due date were mailed to the said trust company at its office for payment; that Brown was out of the state at said time, and had made no arrangement for payment, whereupon the trust company as indorser took up said coupons upon maturity, and remitted therefor to said insurance company by check or draft, which was paid in due course. (7) Said trust company held said coupons until the appointment of a receiver, who notified Brown of the fact of payment, to which he assented, but made no payment until the payment into court. (8) That when said coupons becoming due on January 18, 1915, were about to mature, said insurance company in like manner mailed to said trust company for payment, and the same were received in the due course of mail, and January 22, 1915, after grace for pay-

ment had expired, said Brown not having paid the same, said trust company as such indorser took up said coupon notes by charging itself with the amount due thereon, to wit, the sum of $213, as received from said Brown in its regular account of daily receipts, and by crediting its remittance account with the like sum, together with other items due said insurance company, amounting in all to $448.33, and at the time entering on said journal the sum of $213 as a collateral loan to said Brown, and thereupon on the same day said trust company issued a certificate of deposit in favor of said insurance company for said sum of $448.33, covering said items, and transmitted the same by the hand of a messenger from its office to the said insurance company at its office in Indianapolis, inclosed in an unsealed envelope with a letter signed by said trust company and addressed to said insurance company, which letter informed said insurance company that they would find inclosed said certificate as a remittance in the sum of $448.33 for collection listed therein as follows:

|                    | Interest on Loan. | Total. |
| ------------------ | ----------------- | ------ |
| Horace G. Brown    | $108              | $108   |
| Horace G. Brown    | 105               | 105    |

together with items of like character making up said sum of $448.33, which letter and certificate were delivered into the hands of the officer of said insurance company having charge of such loan account at its office in said city of Indianapolis, at 1:30 o'clock p. m. of said day, and were accepted from said messenger by said officer without any objection or inquiry concerning the same, and without making any answer thereto; that before the close of banking hours on the

same day said insurance company indorsed and deposited said certificate with checks and other cash items in its deposit account in the Fletcher American National Bank in Indianapolis, and received credit therefor on its passbook and deposit account as for $448.33, the deposit slip used in making such deposit being a printed form prepared by the bank, and having printed in the margin a stipulation that all deposits other than cash items were taken for collection only and solely at the depositor's risk, and on the next day said insurance company entered credit for the payment of said two interest coupons in the sum of $108 and $105, respectively, in its register of mortgage loans, where said Brown mortgages were entered, which credits were so given on account of the said certificate of deposit so received, and not otherwise.

(9) Said certificate of deposit was in the following form and words:

"The Hamilton Trust Company, No. 4765.
$448.33            Noblesville, Ind., Jan. 22, 1915.
H. G. Brown et al. have deposited in this bank Four Hundred Forty Eight and 33/100 Dollars, payable to the order of Reserve Loan Life Insurance Company, Indianapolis, in current funds on return of this certificate properly endorsed.
Not subject to check.
Elmer L. Sturdevant, Pres."

(10) Said certificate was forwarded by said Fletcher American National Bank for collection, and on presentation was dishonored and protested for nonpayment. Whereupon said bank required said insurance company to make its check for the amount

thereof on said deposit account and surrendered said certificate to said insurance company.

(11) There was no understanding between said trust company and said insurance company that said certificate should not be accepted as payment, and the court finds as a fact that the same was tendered and received as payment.

(12) That said trust company made no representation to said insurance company as to whether said Brown had or had not made actual payment of said coupons to said trust company, except as the recitals in said certificate and letter accompanying the same might import, and said insurance company made no inquiry concerning the same and did not learn that said Brown had not in fact paid said coupon until after the filing of said trust company's cross-complaint in this action.

(13) That said trust company was insolvent on January 22, 1915, and after close of business hours was taken in charge by the auditor of state, and did not reopen for business; the cross-plaintiff was afterwards appointed receiver, and the coupon interest notes due July, 1914, and January, 1915, came into his hands as a part of the general assets of said company.

(14) That causes numbered 17,272 and 17,273 by consent of the parties were consolidated; that Brown thereupon paid all costs then accrued, and paid to said insurance company all interest accruing after January 18, 1915, and paid into court $248.68 on the coupons maturing July, 1914, and $238.13 on those maturing January, 1915, and said Brown was thereupon discharged from further liability.

(15) It is agreed by the parties that further pro-

ceedings than those on file be waived, and that the
court might hear all competent evidence and deter-
mine the rights of the parties without objection that
any such evidence was not within the issues.

(16) Before filing its second paragraph of com-
plaint, said insurance company demanded of said
receiver the redelivery of the interest coupon that
matured January 18, 1915, and offered to credit the
principal sums due thereon, to wit, $213 on its claim
filed with the receiver, which demand and offer the
receiver refused, and at the trial said insurance com-
pany again offered to allow such credit, which offer
was also declined by said receiver.

(17) On April 7, 1915, said insurance company
filed with said receiver its claim for $448.33, in which
it alleged that in January, 1915, said Brown had de-
posited with said trust company the said sum of
$213, of said amount, for transmission to it; that
said trust company thereafter mailed said certificate,
which was copied into said claim; that it refused to
accept the same as payment; that it immediately
placed said instrument in said bank for collection, and
that at the time of presentment said trust company
had been closed, and that the moneys certified therein
to have been deposited for claimant had not been
paid; that said insurance company prayed that said
claim be paid as a preferred claim, but it was not
alleged that the fund so certified to have been depos-
ited came into the hands of the receiver, nor that the
same could be identified, nor was preference claimed
out of any particular fund or property; that said
claim was duly verified and is now pending for allow-
ance.

(18) That said trust company had previously col-

lected for said insurance company many coupon interest notes on other mortgages made by it and sold to said insurance company in the same manner as said Brown notes were sold and indorsed, and had never been required to remit the particular fund so collected, but had always made remittance by check or draft or other mercantile paper.

(19) On February 22, 1915, said trust company was adjudged insolvent, and John L. Dulin was appointed receiver and qualified as such, and was authorized to commence, prosecute, and defend all actions necessary for the proper administration of his trust.

(20) Said coupons were transmitted by mail to said trust company, and were accompanied with written notices and demand for payment directed to both Brown and said trust company.

In the eleventh finding of facts, the court finds that the certificate of deposit issued by the Hamilton Trust Company to appellant was tendered and received as payment. There is no conflict in the evidence in this cause, and, after reading it with care, we must say that neither it, nor the primary facts involved, as stated in the special findings, support the ultimate fact of payment as a conclusion therefrom. On January 22, 1915, the Hamilton Trust Company was hopelessly insolvent, and there is an irresistible inference that the officers thereof knew of that condition, and, so knowing, issued the certificate of deposit to the appellant, which they well knew to be worthless, and for which, by a course of *ex parte* bookkeeping, they placed with the assets of the trust company the two notes, both secured by mortgages on real estate. Of this transaction, the payee of the notes and the appellant had

no knowledge whatever. It was a fraud, and no refinement of reasoning can convert such a transaction into payment, and the appellee cannot be permitted to gain advantage therefrom. *Brown* v. *Sheldon State Bank* (1908), 139 Iowa 83, 117 N. W. 289; *Bates* v. *Swiger* (1895), 40 W. Va. 420, 21 S. E. 874; *Thomas* v. *Supervisors, etc.* (1889), 115 N. Y. 47, 21 N. E. 674, 4 L. R. A. 477. If on January 22, 1915, the officers of the trust company did not know that their company was insolvent, then the certificate of deposit was issued to, and accepted by, the appellant under a mutual mistake of existing facts, by the parties thereto, and as such would not constitute payment. *Thomas* v. *Supervisors, etc., supra.*

We fail to find any evidence whatever upon which to base a finding or conclusion of ultimate fact that there was any agreement to accept the certificate of deposit as absolute payment. The burden of this proof was upon the appellee, and in this he has wholly failed. A bill of exchange given on account of pre-existing debt is not payment thereof, in the absence of an agreement to that effect. *Frisbee* v. *Lindley* (1864), 23 Ind. 511; *Costelo* v. *Cave* (1835), 2 Hill (S. C.) 528, 27 Am. Dec. 404; *Kean* v. *Dufresne* (1817), 3 S. & R. (Pa.) 233; *Zerrano* v. *Wilson* (1851), 62 Mass. (8 Cush.) 424; *Sweet* v. *James* (1852), 2 R. I. 270; *Murray* v. *Gouverneur* (1800), 2 Johns. Cas. (N. Y.) 438, 1 Am. Dec. 177; *Smith* v. *Miller* (1870), 43 N. Y. 171, 3 Am. Rep. 690; *Edwards* v. *Harvey* (1892), 2 Col. App. 109, 29 Pac. 1024; *Anderson* v. *Brown* (1851), 1 Fed. Cas. No. 355.

Appellee contends that the acceptance of the certificate of deposit by the appellant raises a presumption

of payment, but, if such be the law, it is a rebuttable presumption. *Beach* v. *Huntsman* (1908), 42 Ind. App. 205, 209, 85 N. E. 523, and cases cited; *Bradway* v. *Groenendyke* (1899), 153 Ind. 508, 510, 55 N. E. 434. In this case, the facts that the certificate was sent by the trust company, *as a remittance,* that on the same day that it was received it was deposited for collection, and that acceptance as absolute payment would surrender a debt secured by a mortgage lien on real estate, we think rebut any presumption that the certificate of deposit was payment, except upon the condition that it would be honored upon presentment. All the circumstances surrounding this transaction fully rebut any presumption of payment. We have but to apply the evidence, which is uncontradicted, in reaching this conclusion.

The appellee is only entitled to subrogation to the extent that it is necessary to reimburse him for his actual payment. *Waldrip* v. *Black* (1887), 74 Cal. 409, 16 Pac. 226; *Union Stone Co.* v. *Board, etc.* (1906), 71 N. J. Eq. 657, 65 Atl. 466; *First Nat. Bank* v. *City Trust, etc., Co.* (1902), 114 Fed. 529, 52 C. C. A. 313; *Kilpatrick* v. *Dean* (1889), (N. Y. Com. Pl.) 4 N. Y. Supp. 708. Surely, appellee will not claim that appellant's debt has been actually paid, and fully satisfied, and that he is entitled to reimbursement because his company has made such payment and satisfaction. To so hold would be legal fiction which the conscience of equity cannot comprehend.

The right of subrogation is a doctrine of equity jurisprudence, and is founded on principles of natu-

ral justice. *Hubbard* v. *Security Trust Co.* (1906), 38 Ind. App. 156, 158, 78 N. E. 79; *Spray* v. *Rodman* (1873), 43 Ind. 225; *Johnson* v. *Barrett* (1889), 117 Ind. 551, 19 N. E. 199, 10 Am. St. 83; *Davis* v. *Schlemmer* (1897), 150 Ind. 472, 50 N. E. 373; *Warford* v. *Hankins* (1898), 150 Ind. 489, 50 N. E. 468.

But appellee now tells us that the equitable doctrine of subrogation does not apply; that there is no subrogation about it, and that the question is purely a legal one. We do not need to discuss this proposition, for the reason that the appellee's petition to intervene and his cross-complaint are both based on the principle of subrogation, and, having so clothed himself as he knocked at the door for admission, he must not now be permitted to cast off the garment with which he gained his entrance.

Having decided that the special findings are erroneous, we do not need to consider the conclusions of law based thereon.

The judgment is reversed, with instructions to grant a new trial.