JOHN C. ERTEL, IV *v.* RADIO CORPORATION OF AMERICA,
JOHN R. DUGAN, DELTA ENGINEERING CORPORATION,
AND ECONOMY FINANCE CORPORATION.

[No. 274S42. Filed February 27, 1974.]

*Transfer granted; cause remanded with instructions.*

*Stephen Goldsmith, Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, for appellant.

*Alan H. Lobley, D. Robert Webster,* of Indianapolis, for appellee, Radio Corporation of America, *Nisenbaum & Brown,* of Indianapolis, for appellee, Economy Finance Corporation.

HUNTER, J.—This cause originated as an action by a finance company, Economy Finance Corp. (Economy) against its debtor, Delta Engineering Corp. (Delta) for amounts due

under a loan and security agreement covering revolving inventory and accounts receivable. Also named as defendants were the guarantors for the payment by Delta, John R. Dugan, President and General Manager of Delta, and John C. Ertel, Secretary-Treasurer of Delta. Delta defaulted on the note, and Dugan's whereabouts are unknown—leaving only Ertel to face the liability.

Ertel, in response to the original complaint, filed a third-party complaint against Radio Corporation of America (RCA) and alleged the following:

RCA was a customer of Delta and, in contracting to purchase machines from Delta, RCA had become Delta's account debtor. To secure its loans from Economy, Delta had assigned its accounts receivable to Economy. RCA was allegedly given notice of this assignment which would in turn require RCA to make all payments to Economy for any machinery purchased from Delta. Contrary to that alleged notice of assignment, RCA made all payments directly to Delta. RCA wrongfully paid these accounts receivable to Delta and allegedly remained liable to Economy. Ertel, as a result of his payment to Economy, claims to be the subrogee of Economy vis-a-vis RCA.

RCA, in its answer, argued that even if it were liable to Economy for the payments made to Delta, it had a right of set-off against Economy. RCA contended that Ertel as subrogee of Delta's assignee (Economy) was, therefore, subject to its right of set-off.

The trial court entered summary judgment against Ertel on Economy's original complaint in the amount of $19,674.10 on May 7, 1971. The Court also entered judgment against Ertel on his third-party complaint on September 14, 1972. The latter judgment was appealed to the Court of Appeals, First District, which reversed the trial court. The Court of Appeals held that Ertel should be subrogated to Economy's rights as assignee of the accounts receivable from RCA and that the assignee-Economy (thus, Ertel as subrogee)

would take free of certain set-off rights claimed by the account debtor (RCA) against its account creditor (Delta).

We believe that both the trial court and the Court of Appeals erred and that, therefore, transfer should be granted to rectify the situation.

There are three major issues presented for our consideration:

1. Does Economy have a claim against RCA for wrongful payments?

2. Is Ertel, as guarantor of the note, subrogated to Economy's rights against RCA?

3. Does RCA have rights of set-off against Economy and, therefore, against Ertel?

I *Economy's claim against RCA*

U.C.C. 9-318(3) (IC 1971, 26-1-318(3) [Ind. Ann. Stat. § 19-9-318(3) (1964 Repl.)]) reads as follows:

"The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

Section 9-318(3) clearly delineates the legal relationship between the account debtor (RCA) and the assignee (Economy) once the account debtor receives adequate notification of an assignment. The account debtor, upon receipt of said notification, is duty-bound to pay the assignee and not the assignor. Payment to an assignor, after notification of assignment, does not relieve the account debtor of his obligation to pay the assignee unless the assignee consents to such a collection process. (See official Comment #3, 9-318.) The account debtor's failure to pay the assignee after receiving due notification gives rise to an assignee's claim for wrongful payment.

In order to determine liability for wrongful payment, we must ascertain whether or not RCA received adequate notifica-

tion as required by 9-318(3). Notification is nowhere defined in 9-318(3), but is defined in 1-201(26) (IC 1971, 26-1-1-201-(26) [Ind. Ann. Stat. § 19-1-201(26) (1964 Repl.)]) :

> "A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person 'receives' a notice or notification when
> "(a) it comes to his attention; or
> "(b) *it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications."* (Emphasis added.)

The following facts are stipulated in the record:

1. On or about May 12, 1969 Economy Finance Corp. mailed written notice of assignment to the RCA Magnetic Products Division, Indianapolis.

2. Notice was sent by certified mail.

3. A dock employee of RCA Magnetic Products Division receipted for said notice by signature on May 14, 1969.

4. The mail was normally delivered by the post office to the receiving dock.

5. Dock employees were authorized to sign receipts for certified mail.

6. The notice was never received by the accounting department.

The above facts, in our judgment, demonstrate receipt of notification as contemplated by 1-201(26). The fact that the accounting department never received the notice is of no consequence in this case. The notice was duly delivered and received at the appropriate place by an authorized agent of RCA. The negligence of RCA employees after the initial receipt at the dock should not be charged to Economy Finance, but rather to RCA. To hold otherwise is to circumvent the obvious policy behind 1-201(26). Therefore, we hold, as the Court of Appeals held, that RCA was notified of the assign-

ment and that, as a consequence, Economy has a claim for wrongful payment.

## II *Ertel's subrogation claim.*

The Court of Appeals held that Ertel became subrogated to the rights of Economy upon payment of the debt owing from Delta to Economy. We fully agree with this conclusion.

The Uniform Commercial Code, § 9-504 (5), as adopted in Indiana, establishes the basic rights of subrogation:

> "A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of the collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this Article [Chapter]." IC 1971, 26-1-9-504 (5) (Ind. Ann. Stat. § 19-9-504 (5) [1964 Repl.]).

The issue is whether Ertel, as guarantor of the note, became subrogated to the rights of Economy as a result of satisfying the debt owing from Delta to Economy. The general rule, firmly imbedded in Indiana law, is that a surety, upon satisfaction of a debt, is subrogated to all the rights which the creditor had against the principal debtor prior to satisfaction of the debt. *Gerber v. Sharp* (1880), 72 Ind. 553; *Vonderahe v. Ortman* (1958), 128 Ind. App. 381, 147 N. E. 2d 924; *National Mut. Ins. Co. of Washington, D. C. v. Maryland Cas. Co.* (1963), 136 Ind. App. 35, 187 N. E. 2d 575.

Additionally, the surety is subrogated "to the interests which the creditor has in security for the principal's performance." *Restatement of Security*, ALI, Ch. 5, § 141. Therefore, it follows that Ertel, as subrogee of Economy, has a right to the accounts pledged by Delta as security for the initial obligation. Of course, this would include the RCA accounts.

RCA argues that Ertel should not be subrogated to Economy's rights as against RCA. RCA asserts—and we concede—that subrogation is an equitable right subject to the principles

and maxims of equity. *Townsend* v. *Cleveland Fire Proofing Co.* (1897), 18 Ind. App. 568, 47 N. E. 707; *National Mut. Ins. Co. of Washington, D. C.* v. *Maryland Cas Co., supra; Restatement of Security,* Ch. 5, § 141.

"[Subrogation] is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case." *Vonderahe* v. *Ortman, supra,* at 392, quoting 50 Am. Jur., *Subrogation,* § 2, § 10.

RCA's position appears to be that Ertel, seeking equity, has not done equity. To substantiate that position, RCA cites the following "inequities":

1. Ertel was a stockholder, director and secretary-treasurer of Delta;

2. Delta was, in effect, Ertel's company;

3. Delta received the payments from RCA "and like Ertel, had knowledge of the Delta accounts to Economy, yet Delta continued to accept payments from RCA and, in fact, actively solicited RCA to make such payments";

4. Ertel "had it in his power to prevent this from happening, but he took no action."

The above allegations are largely unsubstantiated by the record. Ertel was merely an investor and took no active part in the management of the corporation. Dugan, the now vanished president and principal stockholder, was specifically designated as manager. Ertel did not become aware of the fact that notice had been delivered to RCA until after Economy sought payment from him as surety. Realistically, it seems highly untenable that Ertel could reasonably have prevented the wrongful payments without knowing of their wrongful nature.

In conclusion, we are unable to discern any reason why Ertel should be denied the right of subrogation.

III *RCA's set-off rights against Economy (Ertel).*

The assignment agreement between Delta and Economy covered Delta's present and future accounts receivable. The

accounts receivable in question were created by contracts for the sale of machinery from Delta to RCA. There were three such sales and each was governed by the same standard contract. RCA now claims that machines transferred in the last sale were substantially incomplete and that RCA had to expend considerable sums of money to make the machines complete and usable. Thus, RCA claims to have a set-off right against Delta for Delta's incomplete performance of the last contract and that, *ergo*, Ertel, as subrogee of Economy, also takes subject to those rights.

Determining against whom RCA can assert its claim is governed by § 9-318(1) of the Commercial Code:

*"Defenses Against Assignee; Modification of Contract After Notification of Assignment; Term Prohibiting Assignment Ineffective, Identification and Proof of Assignment*

"(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9-206 the rights of an assignee are subject to

"(a) all the terms of the contract between the account debtor and assignor and any defense *or claim arising therefrom;* and

"(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." IC 1971, 26-1-9-318(1) (Ind. Ann. Stat. § 19-9-318(1) [1964 Repl.]). (Emphasis added.)

The Court of Appeals concluded that RCA had no set-off rights, viewing 9-318(1)(b) as a bar. Apparently, the Court's decision was based on the fact that the last sales transaction between RCA and Delta (the one out of which RCA's claim arises) occurred after notice of the assignment was given by Economy, and that somehow the third contract was a "separate transaction." We believe that this application of 9-318(1)(b) to the facts of this case is entirely improper.

It has been held that set-off is the type of claim contemplated by 9-318(1). *Farmers Acceptance Corp.* v. *DeLozier* (1972 Colo. Sup. Ct.), 496 P. 2d 1016, 10 UCCR 1099. The

issue here is whether *RCA's-set-off* is the type of claim comprehended by *9-318(1)(a)* or *9-318(1)(b)*. Section 9-318(1)(a) is clearly the applicable provision in that RCA's claim arose from the contract between itself and Delta.

The Oregon Supreme Court has provided us with the following analysis of § 9-318(1)(a) and (b):

> "The Code distinguishes 'between what might be called the contract-related and the unrelated defenses and claims. *Defenses and claims "arising" from the contract can be asserted against the assignee whether they "arise" before or after notification.* * * * Under the Code, "any other defense or claim" is available against the assignee only if it "accrues before * * * notification." ' 2 Gilmore, Security Interests in Personal Property, 1090-1091, § 41.4 (1965).

> "The setoff or claim the defendant seeks to assert *is an unrelated setoff because it arises out of a breach of a contract not connected with the invoice assigned to the bank.* For this reason the defendant can assert the setoff only if it accrued before the defendant was notified of Centralia's assignment to the bank." *Seattle-First National Bank* v. *Oregon Pacific Industries, Inc.* (1972), 262 Ore. 578, 581, 500 P2d 1033, 1034. (Emphasis added.)

This interpretation is entirely consistent with UCC 9-318, Official Comment, No. 1:

> "When the account debtor's defenses on an assigned account, chattel paper or a contract right *arise from the contract between him and the assignor it makes no difference whether the breach giving rise to the defense occurs before or after the account debtor is notified of the assignment."* (Emphasis added.)

In the case at bar RCA's claim arose from the subsequently assigned contract between itself and Delta. The fact that the claim arose *after* Economy gave notice of the assignment is irrelevant. Therefore, Economy's rights were subject to RCA's herein asserted claim.

Ertel, as subrogee of Economy, succeeds to the rights of Economy vis-a-vis RCA. That is to say, Ertel becomes subrogated to Economy's interest in the RCA accounts. However, the subrogee (Ertel) receives no more or no fewer rights than

Economy possessed at the time Ertel satisfied the debt. The Tenth Circuit has characterized the nature of the subrogee's rights in the following manner:

> "One who acquires or succeeds to rights, claims or securities through subrogation takes them burdened with the limitations and disqualifications to which they were subject in the hands of the person for whom he is substituted. The rights he acquires thereby are not greater nor better than those which the person for whom he is substituted had at the time of the payment which effected the subrogation." (Citing *inter alia, In Re Paoli Lithia Springs Hotel Co.* (7th Circuit, 1925), 5 F. 2d 902.) *Alexander* v. *Young* (1933), 65 F. 2d 752, 757.

It follows, therefore, that Ertel has succeeded to the rights of Economy—subject to the RCA claim.

For all the foregoing reasons, transfer is hereby granted and the cause remanded to the trial court to determine liability with respect to the third-party complaint of John C. Ertel.

Transfer granted.

DeBruler, Givan, and Prentice, JJ., concur; Arterburn, C.J., not participating.

NOTE.—Reported in 307 N. E. 2d 471.