MICHIANA MACK, INC.,
Appellant-Defendant,

v.

ALLENDALE RURAL FIRE PROTECTION DISTRICT, Appellee-Plaintiff.

No. 3–781A172.

Court of Appeals of Indiana,
Third District.

Dec. 15, 1981.

Rehearing Denied Jan. 18, 1982.

Richard D. Bonewitz, Hammerschmidt, Bonewitz & Miller, South Bend, for appellant-defendant.

James J. Olson, Mishawaka, for appellee-plaintiff.

STATON, Judge.

Allendale Rural Fire Protection District (Allendale) instituted this cause in the court below to recover damages pertaining to the purchase of a used fire truck from Michiana Mack, Inc. (Michiana). The court found for Allendale and Michiana presents the following issues for our review:

Under IC 26–1–2–714,[1] where the buyer has not rejected or revoked acceptance of the goods, may the court:

(1) Order the seller to repair the goods or refund the price of the goods; or,

(2) Award damages to the buyer for insurance and interest payments made with respect to those goods.

We conclude that the court may not do either. Therefore, pursuant to Ind. Rules

---

1. Hereinafter, citation to statutes under Indiana's Uniform Commercial Code—Sales, Ind. Code §§ 26–1–2–101 to –725 (1976 & Supp. 1981), shall only include the chapter and section numbers. Thus, the above referenced citation is 2–714.

of Procedure, Appellate Rule 15(N)[2], we hereby order the trial court's final order and judgment to be reversed and vacated in part, and modified in part in accordance with this opinion.

Michiana advertised a used fire truck for sale. Five members of Allendale test drove the truck in April of 1978. Although the truck was experiencing overheating problems, Allendale offered to pay $9,500 for the truck, with a $1,000 downpayment and the balance upon acceptance. The offer expressly noted the overheating problem was to be repaired.

On May 8, 1978, having been assured the overheating was repaired, Allendale paid the balance and accepted the truck. From that date to the date of the trial, December 17, 1980, the truck experienced overheating problems. During that period of time, Allendale attempted to repair the truck itself and with the aid of paid mechanics. All attempts were unsuccessful.

Allendale never attempted to rescind the contract or return the truck. In fact, the complaint filed by Allendale only sought damages.[3] The trial court concluded Allendale had "accepted" the truck in that there had been no "effective rejection."[4] The trial court, finding Allendale's remedy under the provisions of 2–714 (see footnote 1, *supra*), ordered Michiana to: (1) repair the truck or refund the purchase price; and (2)

pay damages including Allendale's expenses regarding interest and insurance on the truck.[5]

## I.

### Repair or Refund of the Price

Michiana first challenges whether the trial court's alternative order to repair the truck or refund the price is within the purview of 2–714[6], which provides:

"(1) Where the buyer has accepted goods and given notification (subsection (3) of section 2–607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under the next section may also be recovered." (footnote omitted)

The trial court, under the apparent misapprehension that subsections (1) and (2) delimit mutually exclusive remedies, stated:

---

2. *See, State v. Church of Nazarene of Logansport* (1978), 268 Ind. 523, 377 N.E.2d 607; *Stewart v. Hicks* (1979), Ind.App., 395 N.E.2d 308.

3. Allendale points out the complaint also sought "all other just and proper relief." The order of the court awarding relief other than damages in the present case, however, was not just and proper. See Part I, this Opinion, *infra*.

4. 2–606(1)(b) provides:
   "Acceptance of goods occurs when the buyer
      *    *    *    *    *    *
   "(b) fails to make an effective rejection. . . ."

5. The trial court also awarded Allendale damages for repair and miscellaneous expenses. Michiana does not challenge the award of those damages.

6. As noted, the trial court found that Allendale had accepted the fire truck. *See* footnote 4, *supra*, and accompanying text. Having accepted the "goods," Allendale's remedy lies within the provisions of 2–714. The Uniform Commercial Code *Comment* 1 to 2–714 states that:
   "This section deals with the remedies available to the buyer after the goods have been accepted and the time for revocation of acceptance has gone by. . . ."
   *Accord, Richards v. Georg Boat & Motors, Inc.* (1979), Ind.App., 384 N.E.2d 1084; White & Summers, Uniform Commercial Code, p. 375 (1980).

"The Court feels that this is more of a non-conformity case than a breach of warranty case so attention will be focused chiefly on Subsections (1) and (3)...."

■ As a whole, 2–714 addresses the allowable damages where the buyer has accepted goods and there is "any non-conformity of tender." Non-conformity of tender refers both to *goods* and *conduct* under the contract. As defined under 2–106(2):

"Goods or conduct including any part of a performance are 'Conforming' or conform to the contract when they are in accordance with the obligations under the contract."

The *Comment* to 2–714 states in part that:

"The 'non-conformity' referred to in subsection (1) includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract...."

2–714, Uniform Commercial Code *Comment, 2.* Therefore, "non-conformity" is a term of art used to describe two broad categories of breaches, in goods *or* in conduct. "Non-conformity" is not a separate remedy.

■ This distinction, however, does not negate the trial court's' finding that there was a breach of contract. In fact, Michiana does not dispute that there was such a breach. The trial court clearly found that the fire truck was "non-conforming." Under the facts of this case and the law of warranties, such finding of the trial court was equivalent to finding that a breach of warranty had occurred.[7]

Subsection 2–714(1) provides that the buyer may recover damages "determined in any manner which is reasonable." Subsection 2–714(2) limits the manner, however, to a determination of the difference in value of the goods as accepted and as delivered at the time and place of acceptance. As noted in 2–714, Uniform Commercial Code *Comment, 3:*

"Subsection (2) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty but it is not intended as an exclusive measure...."

Following the tenor of this *Comment*, one leading authority suggests three alternative methods for determining the buyer's damages under 2–714: (1) cost of repair;[8] (2) the fair market value of the goods as warranted less the salvage value of the goods;[9] and, (3) the fair market value of the goods as warranted at the time of acceptance less the fair market value of the goods as received at the time of acceptance.[10] White

---

7. 2–313(1) provides that an express warranty is created when a promise or affirmation of fact by the seller becomes "the basis of the bargain." Clearly, repair of the truck's overheating problem was a basis of the bargain. And, 2–314 provides that if the seller is a merchant, there is an implied warranty that the goods are "merchantable." As this Court stated in *Richards v. Georg Boat & Motors, Inc., supra,* at 1091 (modified for the purpose of this case):

"[T]he minimum standard of merchantability concerns whether the product is fit for the ordinary purpose for which it is used; does it meet the general description of a used serviceable prototype [fire truck]."

Clearly, an unreliable vehicle with overheating problems is not fit for the purposes normally associated with fire trucks. The facts clearly support a finding of "non-conformity" and thus of breach of warranties. Allendale was therefore entitled to those damages proved and allowable under 2–714.

8. *White & Summers, supra,* at p. 308 provide the following example:

"A useful objective measurement of the difference in value as is and as warranted is the cost of repair.... Thus, if a buyer accepts a truck with a defective radiator, a good measure of the difference between the value of the truck as warranted and its value as delivered is the price of a new radiator less the value of the faulty one...."

*See also, Jones v. Abriani* (1976), 169 Ind.App. 556, 350 N.E.2d 635.

9. *Ertel v. Radio Corporation of America* (1976), 171 Ind.App. 51, 354 N.E.2d 783.

10. *Jones v. Abriani, supra; Bob Anderson Pontiac, Inc. v. Davidson* (1973), 155 Ind.App. 395, 293 N.E.2d 232. *White & Summers, supra,* at p. 380 state:

"The contract price offers strong evidence of the value of the goods as warranted...."

& Summers, Uniform Commercial Code, pp. 377–81 (1980).

The only damages which might reasonably be considered within the scope of 2–714(2) were those expenditures made by Allendale in the attempted repair of the truck. The trial court ordered recovery of those expenditures denominating them as "incidental and consequential." Whether those damages are properly within the scope of 2–714(2) (breach of warranty) or 2–714(3) (incidental or consequential) is not pertinent to this appeal. Michiana has not challenged that portion of the court's order and judgment. Michiana does challenge the validity of the court's order to either repair the truck or refund the price. Both portions of that alternative order are outside the purview of 2–714(2).

■ The trial court's order to repair was one emanating from the court's equitable powers. We are unwilling under the limited facts of this case to state that the court's equitable powers may never be invoked under 2–714(2). However, before such powers are invoked, the court must assure itself that the party's legal remedies are inadequate. *See, Indiana & Michigan Electric Co. v. Whitley County Rural Electric Membership Corp.* (1974), 160 Ind.App. 446, 312 N.E.2d 503; *Craig v. School City of Gary* (1965), 138 Ind.App. 261, 211 N.E.2d 616.

■■ In the present case, the legal remedies under 2–714(2) clearly may have been adequate. Allendale, however, failed to prove either those damages or why such damages would be inadequate. In fact, the court stated that:

"Since no evidence was offered as to the cost of installing a larger radiator, the Court cannot include that cost in the damage award. The only alternative available is to order the defendant, at its

citing several cases.

11. At the time of trial, Michiana had determined that the overheating problem might be cured by the installation of a larger radiator in the truck. The trial court modified this order

expense, to make arrangements for the installation of an appropriate sized radiator . . . ." [11]

It is the plaintiff's burden to establish the amount of damages under 2–714. *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247, modified on other grounds on rehearing, 369 N.E.2d 947; *Bob Anderson Pontiac, Inc. v. Davidson* (1973), 155 Ind.App. 395, 293 N.E.2d 232. It is not the function of the trial court to fashion equitable remedies to relieve the plaintiff of that burden. The judgment of the trial court to repair was in error.

The trial court's order to refund the price as an alternative to repair of the truck was also in error. There may be the occasional case wherein the measure of damages under 2–714(2) is in fact the purchase price. *See, e.g., W & W Livestock Enterprises, Inc. v. Dennler* (1970), Iowa, 179 N.W.2d 484 (pigs delivered so infected with disease as to be worthless). But, as a general rule, defective goods will normally have at least scrap value. *See, Ertel v. Radio Corporation of America* (1976), 171 Ind.App. 51, 354 N.E.2d 783.

Only 2–711 provides for recovery of the purchase price:

"(1) Where . . . the buyer rightfully rejects or justifiably revokes acceptance . . . the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid . . . ;"

with the *Comment* to that subsection stating:

"The remedies listed here are those available to a buyer who has not accepted the goods or who has justifiably revoked his acceptance. The remedies available to a buyer with regard to goods finally accepted appear in the section dealing with breach in regard to accepted goods. . . ."

at a later date pursuant to a motion filed by Allendale. It was the modified order which required Michiana to either repair the truck or refund the purchase price.

2–711, Uniform Commercial Code *Comment*, 1.

■■ The remedy of recapture of the purchase price is clearly dependent upon the buyer's rejection or revocation of the goods.[12] *Jacobs v. Metro Chrysler-Plymouth, Inc.* (1972), 125 Ga.App. 462, 188 S.E.2d 250; *Stream v. Sportscar Salon; LTD.* (1977), 397 N.Y.S.2d 677, 91 Misc.2d 99; *Rose v. Epley Motor Sales* (1975), 288 N.C. 53, 215 S.E.2d 573. Allendale did not reject or revoke acceptance of the goods. Therefore, the trial court erred in ordering, in the alternative, the truck price be refunded.[13]

## II.

### Insurance and Interest Payments

In purchasing the truck, Allendale obtained financing and insurance. To the date of the trial, Allendale had made $2,040 in interest payments[14] and $1,348 in insurance premiums. The trial court awarded both of these amounts to Allendale as "incidental and consequential" damages, stating:

"The elaborations on the meanings of the terms 'incidental' and 'consequential' damages contained in I.C. 26–1–2–715 need not be dwelt upon. The Court finds the language contained in sections 2–714 and 2–715 to be broad enough to encompass all damages which have been sought

in this case, except the refund of the purchase price of the truck . . . ."

We disagree.

Under 2–714(3), the buyer accepting goods may obtain, in addition to breach of warranty damages, "incidental and consequential damages . . . ." 2–715 provides:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include

"(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(b) injury to person or property proximately resulting from any breach of warranty."

As emphasized, both incidental and consequential damages must result from the seller's breach. It is upon that langauge which this decision pivots. The payment of insurance premiums and interest did not result from Michiana's breach.

---

12. *White & Summers, supra*, at p. 293, provide the following overview of rejection and revocation:

"Rejection and revocation are self-help remedies of substantial significance. Although the Code describes the procedure one must follow in order to make an effective and rightful rejection, the Code nowhere defines the verb 'reject.' Somewhat simplified, rejection is a combination of the buyer's refusal to keep delivered goods and his notification to the seller that he will not keep them. Revocation of acceptance is a similar refusal on the buyer's part to keep goods, but in this case it is a refusal which comes at a later time in the transaction and after the buyer has 'accepted' by allowing the time for rejection to pass or by some act with respect to the goods . . . ."

13. Allendale, *citing Ertel v. Radio Corporation of America, supra*, argues that the Uniform Commercial Code provisions for damages are not exclusive. The Court in *Ertel*, noting there were no provisions for damages in the sales contract, did in fact state that:

"the damages sections of Article II of the Indiana Uniform Commercial Code are applicable, (2–711, et seq.) *but not exclusive.*" (emphasis added)

171 Ind.App. at 54, 354 N.E.2d at 785. The "not-exclusive" language in *Ertel* was mere *dicta*. The damages allowed by the *Ertel* Court were strictly within the parameters of 2–713 and 2–715.

14. Allendale neither made payments on the principal nor sought recovery of the principal at trial.

■ The Fourth District of this Court has twice stated that finance charges in the purchase of an automobile were "consequential" damages under 2–715(2), and thus recoverable by the buyer. *Coyle Chevrolet Co. v. Carrier* (1979), Ind.App., 397 N.E.2d 1283, 1287; *Hudson v. Dave McIntire Chevrolet, Inc.* (1979), Ind.App., 390 N.E.2d 179, 184, n. 4. In both cases, however, the buyer's cause of action was based upon revocation of acceptance.[15] Therein lies the critical difference. If a buyer accepts goods, discovers such to be non-conforming and properly rejects or revokes acceptance of the goods, then those expenses which are "incidental" to or a "consequence" of that entire transaction may rightfully be recovered. The expenses incurred by the buyer are correctly considered a result of the seller's breach.

■ In the present case, however, the buyer accepted the goods and did not revoke acceptance (or reject the goods). The buyer retained the value of the goods accepted. Expenses arising therefrom can not be said to be the result of the seller's breach. If the buyer had revoked acceptance due to the seller's breach, then the finance and insurance expenses are the result of the breach. However, where the buyer retains the goods, the expenses are actually the result of the retention of the goods.

In *Wagner Tractor, Inc. v. Shields* (9th Cir. 1967), 381 F.2d 441, after first noting that the method of financing was in the control of the buyer, the Court stated:

"Second, we take it as elemental that upon discovery of the breach of warranty [buyer] was fully entitled to rescind the purchase contract with [seller] . . . Had [buyer] elected to rescind and return [the goods], he would not have been required to finance his continued possession of the [goods]. Having elected not to ‚rescind and to retain possession, he cannot now burden [seller] with the costs of that decision." (brackets added)

*Id.* at 445.

If the buyer revokes acceptance of the goods due to the seller's breach, the expenses arising out of the tender, acceptance and revocation of acceptance were not necessary to the buyer. As a result of the seller's breach, the buyer needlessly assumes expense such as the purchase of insurance and the payment of finance charges. However, if the buyer does not revoke acceptance of the goods despite the seller's breach, the expenses arising out of the tender and acceptance were necessary to the buyer. The buyer needed to assume the expenses of the insurance and the finance charges to retain the goods regardless of the seller's breach.[16]

Allendale retained possession of the truck and the finance charges (interest) and insurance premiums were necessary to that retention. Therefore, the trial court erred in awarding those expenses to Allendale as consequential and incidental damages.

Pursuant to Ind. Rules of Procedure, Appellate Rule 15(N): The trial court's alternative order to Michiana to either repair the overheating problem or refund the price of the truck is vacated. Further, the trial court is ordered to correct its award of damages to Allendale by excluding those amounts allowed for interest and insurance payments; and, therefore enter final judg-

---

15. *Accord, Lloyd v. Classic Motor Coaches, Inc.* (N.D.Ohio 1974), 388 F.Supp. 785; *Carl Beasley Ford, Inc. v. Burroughs Corp.* (E.D.Pa. 1973), 361 F.Supp. 325.

16. Otherwise stated: But for the seller's breach, the buyer need not revoke acceptance and needlessly incur the expenses of acceptance. Therefore, the buyer may recover those expenses. However, but for the buyer's retention of the goods, the buyer need not assume the expenses of retaining those goods. Therefore, the buyer can not recover those expenses.

ment of damages for Allendale in the amount of $1,799.42.[17]

HOFFMAN, P. J., and GARRARD, J., concur.

17. The trial court originally awarded Allendale damages in the amount of $5,187.42. The court found Allendale to have made payments for insurance and interest in the amounts of $1,348.00 and $2,040, respectively. The net difference, therefore, is $1,799.42.