**TRADEX, INC., Appellant,**

v.

**MODERN MERCHANDISING, INC., and LaBelle's Distributing, Inc., Respondents.**

**Nos. CO–85–2320, C2–85–2321.**

Court of Appeals of Minnesota.

May 13, 1986.

upon cohabitation was without basis in Minnesota law.

Robert M. Lindstrom, Minneapolis, for Tradex, Inc.

Ronald L. Haskvitz, Smith, Juster, Feikema, Malmon & Haskvitz, Minneapolis, for Modern Merchandising, Inc.

Heard, considered and decided by POPOVICH, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Tradex brought this action against LaBelle's and Modern Merchandising for wrongful payment of accounts receivable to the assignor, All Freight Transportation, Inc. The trial court ruled that All Freight was Tradex's agent for payment as a matter of law, based on the terms of the contract between Tradex and All Freight. Tradex appeals the summary judgment; we reverse and remand for trial.

## FACTS

In March 1982, All Freight Transportation, Inc., an Idaho corporation, entered into a "factoring agreement" with Tradex, an Oregon corporation. Under the contract Tradex agreed to purchase and collect All Freight's accounts receivable as they were generated, charging 3.396 percent of each account's value. The contract provides in relevant part:

5. *Security Interest.* Debtor [All Freight] hereby grants Tradex, Inc. a present security interest in and assigns to Tradex, Inc. absolute ownership in all accounts receivable now or hereafter created by debtor's performance of transportation services (freight bills). As such owner Tradex, Inc. shall have all rights under the Uniform Commercial Code. In creating a security interest in [favor of] Tradex, Inc. * * * and in assigning the accounts to it, debtor represents and warrants that each account is based upon transportation services actually performed and that * * * the original freight bill bears notice of assignment to Tradex, Inc.

\*       \*       \*       \*       \*       \*

8. *Remittances.* All remittances received by debtor for payment of freight bills are the property of Tradex, Inc. and debtor will deliver all such remittances to Tradex, Inc. Debtor acknowledges that any collection by it of a freight bill, which has been sold and assigned to Tradex, Inc., directly from a customer, other than an error made in good faith, is a default under the terms of this agreement.

In addition, the "Factoring Rules of Tradex, Inc.," which were incorporated into the agreement, provide:

21.1 Should Carrier [All Freight] receive a remittance other than cash from the Debtor in payment of a Bill previously sold to TRADEX, Inc., Carrier agrees to immediately forward the remittance *in its original form* to TRADEX, Inc. In the event that the remittance is deposited

by Carrier in error, or if cash was received, Carrier agrees to immediately notify TRADEX, Inc. that collection has been made and request the Bill be charged back.

21.2 Bills paid direct and unreported by Carrier that are discovered in the collection process will be charged back to Carrier together with collection agency, legal and interest costs incurred.

(Emphasis added).

In February and March of 1984, Tradex purchased a number of accounts receivable for transport services rendered by All Freight to respondents Modern Merchandising, Inc., and its wholly owned subsidiary, LaBelle's Distributing, Inc., of Minnesota. Tradex issued invoices to respondents printed with one of the two following legends:

> THIS BILL ASSIGNED AND PAYABLE TO
>
> TRADEX
>
> P.O. BOX 3262
>
> PORTLAND, OREGON 97208
>
> PLEASE REMIT DIRECT TO THEM
>
> ———
>
> SOLD, ASSIGNED & PAYABLE TO:
>
> TRADEX, INC.
>
> PO BOX 3262
>
> PORTLAND, OREGON 97208

Modern Merchandising paid freight bills totaling $6,372.16 and LaBelle's paid freight bills totaling $25,272.38 to All Freight instead of to Tradex. All Freight was thus paid twice on each freight bill— once by Tradex and once by the account debtor. All Freight failed to turn these funds over to Tradex and is no longer in business.

Tradex brought actions against Modern Merchandising and LaBelle's for wrongful payment. The respondents claimed All Freight was Tradex's agent for payment under the factoring agreement. The trial court agreed and granted summary judgment for Modern Merchandising and LaBelle's.

## ISSUE

Did the trial court err in granting summary judgment to the account debtors on the basis that under the factoring agreement All Freight became Tradex's agent for payment as a matter of law?

## ANALYSIS

Article 9 of the Uniform Commercial Code applies to both security interests in accounts and to outright sales of accounts.[1] *See* U.C.C. § 9–102 (1978) comment 2. An account debtor's payment obligations after assignment of the account are outlined in Minn.Stat. § 336.9–318(3) (1984):

> The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

So long as the assignee permits the assignor to collect claims, the account debtor may pay the assignor even though he may know of the assignment. In such a situation the assignee who wants to take over collections must notify the account debtor to make

---

**1.** The parties do not dispute that Article 9 applies to this case. An assignment of accounts "for the purpose of collection only" is excluded from the article. *See* Minn.Stat. § 336.9–104(f) (1984). The exclusion generally applies when accounts are assigned to a collection agency and the agency pays the assignor only if and when it collects; the exclusion does not apply to the assignment of accounts at a discount in order to secure operating cash, because this arrangement is financing in nature. *See Daly v. Shrimplin,* 610 P.2d 397, 401 (Wyo.1980). It appears from the contract that Tradex paid All Freight immediately as the accounts were assigned, so the contract was a financing arrangement within the scope of Article 9.

further payments to him.[2] U.C.C. § 9–318 comment 3.

An assignee who consents to the assignor's collection of payment may waive the right to proceed against the debtor. In *Ertel v. Radio Corporation of America,* 261 Ind. 573, 307 N.E.2d 471 (1974), the court said:

> Section 9–318(3) clearly delineates the legal relationship between the account debtor * * * and the assignee * * * once the account debtor receives adequate notification of an assignment. The account debtor, upon receipt of said notification, is duty-bound to pay the assignee and not the assignor. *Payment to an assignor, after notification of assignment, does not relieve the account debtor of his obligation to pay the assignee unless the assignee consents to such a collection process.* * * * The account debtor's failure to pay the assignee after receiving due notification gives rise to an assignee's claim for wrongful payment.

*Id.* at 575, 307 N.E.2d at 473 (emphasis added). LaBelle's and Modern Merchandising claim that they regularly paid All Freight, despite the notice of assignment, and that Tradex consented to this method of payment, objecting only when All Freight went out of business.

In granting summary judgment to respondents the trial court relied not on the parties' conduct but, as urged by respondents, on the terms of the factoring agreement between Tradex and All Freight. The court cited *Dworsky v. Unger Furniture Co.,* 212 Minn. 244, 3 N.W.2d 393 (1942), in support of its decision. In *Dworsky* the supreme court affirmed a directed verdict for the account debtor because the assignment contract required the assignor to *"endorse over* to the [assignee] any and all * * * instruments of payment which may be made payable to the [assignor] and transmitted to the [assignor] by such dealers as may * * * disregard the notice of assignment." *Id.* at 248, 3 N.W.2d at 395 (emphasis added).

We do not believe the factoring agreement creates between these parties, as a matter of law, the agency relationship that was present in *Dworsky.* There, the assignee gave the assignor actual authority to endorse over all instruments of payment. The assignor and assignee became the same party for purposes of payment. Here, the parties specified that all remittances received by All Freight were to be forwarded to Tradex *in their original form* and that any collection by All Freight directly from a customer, other than a good-faith error, was a breach of contract. By this written arrangement the parties maintained separate identities for purposes of payment. Whether All Freight became Tradex's agent for payment because Tradex consented to a different collection practice, however, is a question of fact for the jury.

### DECISION

Under the factoring agreement All Freight did not become Tradex's agent for payment as a matter of law.

Reversed and remanded for trial.

---

**2.** Notice of an assignment will not cut off the account debtor's rights to pay the original creditor unless it contains an explicit direction that payment is to be made to the assignee. *Vacura*

*v. Haar's Equipment, Inc.,* 364 N.W.2d 387, 391 (Minn.1985). The parties agree that notice is not an issue in this case.