Harry N. Grossman, Trustee in Bankruptcy for Gron, Incorporated, a Bankrupt, Plaintiff-Appellee, v. Tom D'Or, d/b/a The House of D'Or, Defendant-Appellant.

Gen. No. 51,555.

First District.

August 28, 1968.

Foss, Schuman & Drake, of Chicago (George C. Pontikes, of counsel), for appellant.

Shaffer, Seelig, Mandel & Shapiro, of Chicago (Kalman S. Lieberman and Roger B. Mandel, of counsel), for appellee.

TRAPP, J.

Defendant appeals from a judgment in the sum of $5,830 upon an account stated, entered in favor of the plaintiff after a trial before the court.

It is urged on appeal that the evidence established, as a matter of law, that defendant, as buyer, had revoked acceptance of the merchandise, and that the judgment of the court was against the manifest weight of the evidence.

The complaint alleges the sale of some 708 wig cases and the refusal to pay the unpaid purchase price thereon. Delivery was made under two invoices in September, six invoices in October and one invoice in November, all in the year 1962.

Defendant's answer alleged that the wig cases were defective, that the seller and its agent were unable to cure the defects after prompt notice, and that defendant repeatedly asked that the cases be taken back, but received no reply.

Defendant argues revocation of acceptance under the provisions of chapter 26, § 2–608, Ill Rev Stats, 1961:

> "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
>> "(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>> "(b) without discovery of such non-conformity if his acceptance was reasonably induced

either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." 1961 July 31, Laws 1961, p 2101, § 2–608.

The trial court stated into the record certain conclusions, i. e., that there was some evidence that some of the cases were slightly defective, that such items were repaired by the salesman, or repaired by the seller and redelivered to the defendant, that payments were made from time to time on the several shipments without showing when such payments were stopped, and that the defendant had not reasonably informed the seller of the revocation of the acceptance of the merchandise.

The burden is on the buyer to establish any breach with respect to the goods accepted. Chapter 26, § 2–607, Ill Rev Stats, 1961. The evidence, as abstracted, has little specific focus on the quality of the merchandise, and is substantially undocumented. When called under section 60 of the Civil Practice Act, defendant testified that separate orders were given for the cases shipped under the nine invoices. The abstract does not indicate the number of orders as distinguished from the number of invoices. He testified that he complained as to the first shipment, specifically as to the failure of locks or latches on the cases, and the fact that the "blockhead" or form for holding the wig came loose in the case. He asserted that similar complaint was made as to all shipments, and that all of the cases were no good. Some cases were

200

given away to customers who purchased wigs, and it is stated that one-half of such cases were returned. On cross-examination defendant testified that some wholesale customers to whom shipments were made returned the cases unopened, because they did not like the merchandise. He testified that some 350 to 400 cases were ruined by water when stored in his basement in 1965, and were hauled away.

One Linderman, appearing under subpoena, testified that he had been the salesman for the seller during the period of the shipments, that he had examined the first 200 cases sent to the buyer, a few of which had defective latches which he fixed, or which were repaired at the factory and returned to the defendant. On some, the form which held the wigs came loose and he glued the necessary pieces in. He testified that he told defendant to put aside a few cases for returning to the seller, which would be repaired or replaced. He further testified that defendant had stated to him that cases shipped to wholesale customers were returned to defendant by such customers because they had never been ordered.

Chapter 26, § 2–608(2) requires that revocation of acceptance of merchandise must be within a reasonable time, and:

> "It is not effective until the buyer notifies the seller of it."

By letter dated January 15, 1963, the City National Bank of Detroit advised defendant that it was assignee of the seller's, Gron, Inc., accounts receivable and requested immediate payment of past due invoices.

Defendant replied on January 17, 1963, first making claim to revoke the acceptance of the merchandise, stating that the merchandise was very inferior, and that nine out of ten cases were returned to defendant, and:

> ". . . we wish to return all Gron merchandise *we have on hand*. We will even pay the freight charges

to do so. And we wish a credit on our account to the extent of the merchandise that I will return. . . ." (Emphasis supplied.)

By a subsequent letter of March 19, 1963, defendant wrote the Bank that they would like to return some 500 cases:

". . . which we have not as yet opened, because we feel that these cases would be in the same condition as the ones returned by our customers. . . ."

We have found no reconciliation or explanation as to the 500 cases which defendant wished to return by this letter and the 350 to 400 destroyed in the flood.

Defendant undertook to support the theory that there was revocation of acceptance with his own testimony concerning telephone calls to the seller, unspecified as to date or number, which were never completed because Gron was not reached. A telephone call to defendant was made by the seller, Gron, to order a wig, and it is stated by defendant that Gron then said that credit would be given or replacement made, as to an unspecified number of cases. Linderman testified that defendant did not, at any time, speak of revoking the acceptance of the merchandise, and in his testimony defendant does not claim that he ever so told Linderman.

The defendant has not undertaken to plead or prove damages arising from the alleged nonconformity of the merchandise under the provisions of chapter 26, § 2–714, Ill Rev Stats, 1961.

We have studied defendant's cited authorities, Air Conditioning Corp. v. Honaker, 296 Ill App 221, 16 NE2d 153, and American Sanitary Rag Co. v. United States Hoffman Mach. Corp., 320 Ill App 556, 51 NE2d 809. In each of these cases the issues concerning the notice of revocation of acceptance and the defect or failure of the merchandise to conform were clearly and explicitly demonstrated.

Upon the facts presented, the evidence fails to establish that, as a matter of law, the defendant had revoked acceptance of the merchandise for nonconformity. The contents of defendant's letters would support the conclusion of the trial court that the defendant had neither shown a nonconformity in some 500 of unopened wig cases, nor had revoked his acceptance of the merchandise. No authorities are cited to support a claim that uncompleted telephone calls are evidence of notice within the meaning of the Commercial Code. Defendant's letters ask for credit and return of unused merchandise at his own expense only after written demand by the assignee Bank. We conclude that the judgment of the trial court is not contrary to the manifest weight of the evidence.

The judgment below is affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.