**DELHOMME INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**HOUSTON BEECHCRAFT, INC., et al.,**
**Defendants-Appellees.**

No. 83-4493.

United States Court of Appeals,
Fifth Circuit.

July 2, 1984.

Domengeaux & Wright, Ross A. Brupbacher, Lafayette, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, Howard Daigle, Jr., New Orleans, La., for defendants-appellees.

Before RANDALL, TATE, and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

In this Louisiana diversity action, the plaintiff Delhomme Industries, Inc. ("Delhomme"), a Louisiana corporation, seeks to recover money damages for a defective aircraft purchased from the defendant-seller Houston Beechcraft, Inc. ("Houston"), a Texas corporation, and manufactured by the defendant Beech Aircraft Corporation ("Beech"), a Kansas corporation. In the first trial of this contract dispute, the district court applied principles of Louisiana law and, sitting without a jury, found in

favor of Delhomme's claims. On appeal, however, this court reversed, finding, inter alia, that Kansas law should be applied in this dispute as stipulated by the parties in their contracts. *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir.1982).

On remand, the parties agreed that the issues remaining in the case could be decided on the record without any additional presentation of evidence. The district court then determined that, under applicable provisions of the Kansas Uniform Commercial Code, enacted in Kansas as Kan. Stat.Ann. § 84-2-101 *et seq.* [hereinafter "Kansas UCC"], the seller had breached an express contractual warranty to Delhomme and that the limited remedy provided in the contract for such a breach had failed of its essential purpose, thus entitling Delhomme to $37,500 in damages.

The plaintiff Delhomme appeals, asserting (1) that the district court should have found that Delhomme effectively "revoked its acceptance" of the aircraft under the Kansas UCC, which would have permitted Delhomme a greater damage recovery against Houston, (2) that the district court erred on remand when it dismissed Delhomme's action for damages against the manufacturer of the airplane, Beech, on the breach of its limited warranty, and (3) that the district court erred in disallowing its claims for incidental damages. Because we find no reversible merit to these contentions, we affirm.

*Factual Context*

The facts of this dispute are more fully set forth in our previous opinion. *Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1052–54 (5th Cir.1982). Pertinently to this appeal, they show:

In March 1977, Delhomme Industries entered negotiations to buy a "Beech B–100 King Air" aircraft from the seller, Houston. On March 30, 1977, prior to inspecting the aircraft, Delhomme signed an agreement to buy the aircraft for a total purchase price of $842,000 ($170,000 on a trade-in of another aircraft, and $672,000 to be financed and due on delivery). The March 30th agreement also contained a typewritten provision under a list of "Contingencies of Sale" stating that "[the] aircraft [is] to be delivered to purchaser free of squawks," *i.e.*, free of operating discrepancies.[1]

Subsequently, on April 6, 1977, the president of Delhomme executed a second agreement entitled "Retail Installment Contract/Conditional Sales Contract and Security Agreement," wherein the Beech Acceptance Corporation, Inc. agreed to finance the remaining $672,000 of the purchase price as provided in the March 30th agreement.[2]

The airplane was then delivered by Houston to Delhomme at the latter's offices in New Iberia, Louisiana. Within a few days of the delivery, Delhomme noticed a number of problems with the aircraft and reported them to the seller. These problems included unreliable readings generated by the distance measuring equipment, the malfunctioning of both the left engine's "beta light" and a generator light, an occasional inability to start the aircraft with its own batteries, incorrect readings on the pilot's altimeter, an unreliable fuel flow valve indicator system, problems with the navigational instruments, and unreliable auto-pi-

---

1. Insofar as the meaning of the term "squawks", we stated in our prior opinion:

 The district court noted that "[t]here was considerable testimony as to the meaning which should be attached to that term." The word "squawk" was coined by Lewis Carroll as a combination of "squall" and "squeak." W. Morris & M. Morris, Morris Dictionary of Word and Phrase Origins 541 (1976). One book defines "squawks" as "malfunctions of the airplane that need to be reported to the maintenance crew after landing." P. Eddy, E. Potter & B. Page, Destination Disaster 209 (1976); *accord,* Webster's Third New International Dictionary, s.v. "squawk sheet" (1966). *Delhomme Industries, supra,* 669 F.2d at 1054 n. 4.

2. In our prior opinion, we held that "[t]he two documents [March 30th and April 6th] ... constitute but one contract that stipulates the terms of the sale of the airplane." *Delhomme Industries, supra,* 669 F.2d at 1056.

lot and flight director systems. None of the problems, according to the district court's findings, were caused by Delhomme's use of the aircraft.

Over the next several months, the seller Houston attempted to repair the aircraft and eliminate the problems reported by Delhomme. In October 1977, Delhomme grounded the aircraft because of the defects. In November, Delhomme wrote to Houston listing the remaining problems and requesting that it repair the airplane once and for all. The seller advised Delhomme that it intended to repair all of the problems under its warranty, and had one of its pilots fly the aircraft back to Texas for an extensive inspection.

In Texas, a removal of the left engine revealed that it was heat-damaged. Houston took the position that Delhomme had caused the heat-damage by improperly starting the aircraft and that therefore the repairs to the engine would not be covered by the "squawk-free" warranty in the contract. Houston demanded that Delhomme pay the cost of the engine repair, estimated to be between $10,000 and $12,000, before it did any further repair work. The district court found at the first trial, however, that the engine damage was the result of faulty instruments—not improper starting—and thus was in fact the responsibility of Houston.

Faced with these circumstances, the president of Delhomme telephoned Houston and offered to resell the aircraft to that company for the sum of $625,000. A letter of December 20, 1977 from Delhomme to Houston described the proposed transaction as follows:

> In reference to the Beechcraft King Air Model # BE–17, N # 17WD, the following agreement has been reached. Delhomme Industries, Inc. will sell to Houston Beechcraft, Inc. the above mentioned King Air for a total sum of six hundred twenty-five thousand dollars, $625,-000.00, in the condition the aircraft is today and this sale is to be consummated on or before January 1, 1978.

In an undated bill of sale listing Houston as the purchaser and Delhomme as the seller, Delhomme resold the airplane to Houston. In return, Houston paid Delhomme $6,000 in cash and cancelled the remainder due on the purchase financing agreement. Houston then repaired the aircraft and resold it to a third party for $662,500.

On August 2, 1978, some eight months after the resale of the aircraft to Houston, Delhomme filed this diversity action in the district court seeking recovery for the difference between the amount it received on the resale and the purchase price of the defective aircraft. As stated earlier, the first trial of this matter under Louisiana law was reversed on appeal. On the second trial, the district court applying the Kansas UCC found that Houston had breached an express "squawk-free" contractual warranty to Delhomme and that the limited remedy provided in the contract had failed of its essential purpose. The district court awarded Delhomme $37,500 in damages.

Delhomme now appeals the district court's judgment. As earlier noted, Delhomme's contentions relate to: I. Revocation of Acceptance; II. Liability of the Manufacturer Beech; and III. Incidental and Consequential Damages.

## I. *Revocation of Acceptance*

Delhomme does not dispute that it accepted, for UCC purposes, the aircraft sold to it by Houston.[3] Delhomme's primary contention on appeal is that the district court erred in finding that it had not effectively "revoked its acceptance" of the aircraft and was thus limited to the post-acceptance action of breach of warranty as to the accepted goods. According to Delhomme, had the district court found an effective revocation of acceptance, Delhomme would have been entitled to damages constituting a full refund of the pur-

---

3. *See* Kansas UCC 2–606, "What Constitutes Acceptance of Goods."

chase price ($217,000)[4] rather than the lesser damages awarded to it for Houston's breach of warranty ($37,500; the difference between the value of goods as accepted with defects, and their value if as warranted).

Delhomme challenges as erroneous the district court's finding that Delhomme's actions in returning and reselling the aircraft to Houston did not constitute effective notice of revocation of acceptance under Kansas UCC § 2–608. Delhomme notes that the UCC requires no specific form for notice of an intent to revoke acceptance,[5] and that its action of "transferring" the aircraft back to Houston for a payment of $625,000 should alone satisfy the notice requirements.

We cannot find that the district court erred in rejecting Delhomme's revocation of acceptance theory.

The UCC provision governing revocation of acceptance, adopted without change in Kansas, reads as follows:

**UCC § 2–608. Revocation of Acceptance in Whole or in Part.**

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

 Revocation of acceptance by a buyer under the UCC "is necessarily a recognition by the buyer that the property [as to which acceptance is revoked] belongs to the seller." *Stroh v. American Recreation and Mobile Home Corporation of Colorado*, 35 Colo.App. 196, 530 P.2d 989, 993 (1975). Consequently, a buyer's act of dominion over the goods, including the sale of the goods, is inconsistent with a claim by the buyer that acceptance has been revoked. *Hays Merchandise, Inc. v. Dewey*, 78 Wash.2d 343, 474 P.2d 270, 273 (1970) (sales of part of goods to third parties). Ultimately, however, whether the buyer has complied with the requirements of § 2–608 in giving adequate notice of revocation of acceptance is a question for the trier of fact. 4 Anderson, Uniform Commercial Code § 2–608:20 (3rd ed. 1983); *Sauers v. Tibbs*, 48 Ill.App.3d 805, 6 Ill. Dec. 762, 766–69, 363 N.E.2d 444, 448–49 (1977).

In the present case, the district court considered the circumstances of the December transaction and made the following factual conclusions:

DI's [Delhomme's] actions were inconsistent with an intent to revoke the sale when it [re]sold the aircraft back to HB [Houston] in December of 1977.

. . . . .

Needless to say such rejection or revocation notice should be in writing, and it should be carefully drafted. Those who have depended upon nonwritten notice or *equivocal* notice of rejection have generally not fared well in the courts.

White and Summers, Uniform Commercial Code § 8–3, at 315 (2d ed. 1980) (Emphasis added).

---

**4.** The $217,000 sought by Delhomme under its revocation of acceptance theory is the difference between the sum it paid for the aircraft ($842,000) and the amount for which it resold the airplane to Houston ($625,000).

**5.** Although notice of revocation of acceptance need not be in any particular form under the UCC, the notice must adequately convey the buyer's intent to revoke acceptance of the goods. One commentator issues the following caveat:

The sales contract between DI and HB of December 1977 made no reference to rescission or revocation of the sale. The earliest manifestation of DI's intent to revoke the sale and recover the purchase price occurred when this suit was filed on August 2, 1978, approximately eight months after HB refused to comply with the warranty. Under the circumstances, DI failed to give HB either adequate notice or timely notice of its intent to revoke acceptance.

In light of the record, we do not find these conclusions to be clearly erroneous.[6]

Delhomme attempts to characterize the resale of the aircraft back to Houston in December of 1977 as a mere "transfer" of the goods back to the seller, thus revoking acceptance in return for a partial refund at that time of the purchase price. Delhomme notes that this court previously affirmed the district court's holding that the parties did not intend that this transaction act as a compromise or accord and satisfaction of Delhomme's claims against Houston. From this, Delhomme argues that the district court should have reasonably concluded that, through the resale of the aircraft, Delhomme intended to pursue its revocation of acceptance remedies against Houston.

■■■ Initially, we note that, just as the December resale of the aircraft to the seller did not necessarily act as a compromise of Delhomme's claims, that resale does not necessarily constitute adequate notice of revocation of acceptance. As noted previously, the issue of adequate notice of revocation turns on the factual question of whether the buyer, through words or deeds, informs the seller that he now considers that the goods do not conform to the contract, along with a notification by the buyer that he is returning the goods to the seller's dominion for that reason.[7]

■■ The record indicates that Delhomme's actions in reselling the aircraft to Houston did not evince a clear intent on Delhomme's part to revoke acceptance. In its letter of December 20, 1977, Delhomme states that it "will sell" the aircraft to Houston for the sum of "$625,000"; it does *not* state that, instead of reselling the aircraft to Houston, Delhomme was returning a non-conforming aircraft, for which it was receiving at that time a partial refund of the purchase price. Similarly, the bill of sale lists Delhomme as "seller" and Houston as "purchaser"; no evidence suggests that this resale was merely an empty gesture executed solely to return title to the seller. The transfer has all the indicia of a bona fide sale of the aircraft by Delhomme,

6. Delhomme argues that the district court improperly confused "revocation of acceptance" under the UCC with "rescission" of the contract. As Official Comment No. 1 to UCC § 2–608 notes:

The section no longer speaks of "rescission," a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as "revocation of acceptance" of goods tendered under a contract for sale and involves no suggestion of "election" of any sort.

See also White & Summers, Uniform Commercial Code § 8–1, at 295 (2d ed. 1980). "It is the apparent intention of the drafters to restrict the word rescission to a rather limited number of cases, those involving a mistake or in which the seller has committed fraud, duress, or the like." *Id.*

Although the district court at times used the term "rescission" in conjunction with the term "revocation of acceptance", the district court clearly applied the correct legal standard under Kansas UCC § 2–608 in its findings. The district court's use of a term avoided by the drafters of the UCC does not diminish the validity of its factual findings as to ineffectiveness of the notice allegedly given by Delhomme to Houston.

7. Notice of revocation of acceptance to the seller must be clearly demonstrated. *Grossman v. D'Or*, 98 Ill.App.2d 198, 240 N.E.2d 266, 268 (1968). Hence, "[w]hen the conduct of the buyer is ambiguous, it does not constitute a required notice of revocation of acceptance." 4 Anderson, Uniform Commercial Code § 2–608:30 (3rd ed. 1983). Thus, in many circumstances, merely returning the goods to the seller, without more explicit indications of intent, will be inadequate notice of revocation of acceptance. *See Poole v. Marion Buick Co.*, 14 N.C. App. 721, 189 S.E.2d 650, 652–53 (1972).

which is inconsistent with an intent to revoke acceptance.

Based upon the evidence, the district court's factual finding was not clearly erroneous, *i.e.*, that by the resale Delhomme did not effectively notify the seller of an intent to revoke acceptance under Kansas UCC § 2–608(2). In that no effective revocation of acceptance was accomplished, the district court properly limited its consideration of Delhomme's claims against Houston to the warranty provisions of the Kansas UCC.

## II. *Liability of Beech, the Manufacturer*

On the prior appeal, this court found that Delhomme validly waived the UCC-implied warranties of merchantability and fitness in the April 6th contract, leaving only the express contractual warranties intact. *Delhomme Industries, supra,* 669 F.2d at 1061. In a summarizing remark, we stated that "Delhomme's only valid ground for complaint, therefore, is Houston's alleged failure to comply with the express 'squawk-free' warranty." *Id.* at 1062. On remand, the district court reasoned that "[s]ince the squawk-free airplane was warranted only by the seller [Houston], Beech, the manufacturer, has no liability even if the war-

ranty was breached." Accordingly, the district court dismissed the action against Beech. Delhomme challenges the district court's ruling, asserting that Beech also breached an *express* warranty to Delhomme contained in the March 30th contract.[8]

The contract of sale plainly contained both a manufacturer's limited warranty *and* a limited remedy to enforce it. Careful reading of our opinion on the initial appeal indicates that we recognized this fact, *Delhomme Industries, supra,* 669 F.2d at 1056, but that we never passed upon the plaintiff Delhomme's claim against the manufacturer for breach of its express limited warranty of defective workmanship, which was brought to the attention of the manufacturer's authorized representative well within the 180 days provided for in this limited warranty.[9]

On the present appeal, Delhomme does not assert that Beech should be held jointly and severally liable with Houston for the $37,500 in damages based upon Beech's express limited warranty.[10] Instead, Delhomme seeks from the manufacturer, Beech, for the alleged breach of its warranty, solely to recover the remainder of the initial purchase price ($217,000). For rea-

---

**8.** That portion of the March 30th contract reads as follows:

> The airplane and equipment purchased herein are covered by the following MANUFACTURER'S LIMITED WARRANTY:
> (a) Subject to the limitations and conditions hereinafter set forth, Manufacturer warrants, at the time of delivery by Manufacturer, each part of the airplane and equipment purchased herein to be free from (i) defects in material or workmanship, and (ii) defects in design that in view of the state of the art as of the date of manufacture should have been foreseen; provided, however, that the defect must be discovered within 180 days after delivery of such airplane and equipment from Manufacturer's factory to Buyer; and <u>provided further, that the entire extent of Manufacturer's liability hereunder shall be limited to that of either repairing the defective part or providing a new replacement part, free of charge to the Buyer, in which event the part to be repaired or replaced shall be returned prepaid to the Manufacturer.</u>

The underlined portion is the "limited remedy" provided by the contract for breach of the man-

ufacturer's limited warranty. *See Delhomme Industries, supra,* 669 F.2d at 1054 n. 2, 1056 (noting "the express manufacturer's limited warranty" *and* "the manufacturer's limited remedy of repair or replacement for breach of warranties.") The limited remedy is unenforceable if it "fails of its essential purpose." *See* text, *supra*.

**9.** The failure of our original opinion to recognize the availability of this claim on the remand is explained by the procedural posture of the case on the prior appeal: the defendant Houston alone was cast and thus was the sole appellant, while the plaintiff Delhomme's cross-appeal, as is seen by examination of the briefs filed in that appeal, raised only issues of quantum and attorney's fees. The issue of Delhomme's possible recovery on the manufacturer's express limited warranty was thus not before this court at that time.

**10.** At oral argument, further, it was stated that the judgment against Houston in that amount had been paid; and the seller Houston does not urge contribution against Beech, the manufacturer (*see* note 11 *infra*).

sons to be stated, this remedy is unavailable to the buyer Delhomme under the present circumstances.

■ The terms of the March 30th contract made all warranties, including express warranties, subject to the exclusive limited *remedy* of repair or replacement of the parts that caused the breach of warranty. *Delhomme Industries, supra,* 669 F.2d at 1062. Under UCC principles, a limited remedy agreed upon by the parties is enforceable *unless* it "fails of its essential purpose." Kansas UCC 2–719(2). In such a case, the UCC provides that "remedy may be had as provided in this Act." *Id.*

The district court found that the limited remedy for breach of warranty provided to Delhomme in the March 30th agreement failed of its essential purpose because the seller "failed to correct the defects within a reasonable time." The court then properly turned to the Kansas UCC remedies for breach of warranty as to accepted goods:

**UCC § 2–714. Buyer's Damages for Breach in Regard to Accepted Goods.**

(1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2–607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section [UCC § 2–715] may also be recovered.

Applying the UCC remedy in § 2–714(2), because the limited contractual remedy

failed of its essential purpose, the district court compared the value of the aircraft "with defects" at the time of acceptance with the value of the aircraft had it been "as warranted". Using estimations of value that are uncontested on appeal, the district court set damages at $37,500.

The district court's assessment of damages thus took account of the value of the aircraft "with defects". Nothing whatsoever in the record indicates that some defects were excluded by the court from the damage assessments under the "squawk-free" warranty that may have been included under the manufacturer's warranty. In that *all* of the aircraft's defects were apparently considered by the district court in assessing the damages for the seller's breach of its warranty, any breach of the manufacturer's warranty would not entitle Delhomme to any greater recovery.[11]

Delhomme refers to *Royal Lincoln-Mercury Sales, Inc. v. Wallace,* 415 So.2d 1024 (Miss.1982), as support for its contention that it could recover the entire purchase price from the manufacturer if the manufacturer's warranty/remedy also failed of its essential purpose. This reliance is misplaced, however. The *Wallace* court was considering the failure of a limited remedy in a contract after the buyer had validly *revoked his acceptance.* In such a case, UCC § 2–711(1), allowing recovery of the purchase price for justifiable revocation of acceptance, would be an appropriate remedy. Where, however, the limited remedy fails after a breach of warranty by the seller, the appropriate UCC remedy is found in the provisions covering damages for breach of warranty. UCC § 2–714 quoted *supra; see Riley v. Ford Motor Co.,* 442 F.2d 670, 673–74 (5th Cir.1971); *see also* White & Summers, Uniform Commercial Code § 12–10 (2d ed. 1980).

■ Thus, when the limited remedy fails of its essential purpose, the buyer is relegated to the UCC remedy applicable to his underlying claim for redress. White and Summers, *supra,* § 12–10 at 469–70. The

---

**11.** Nor is there any claim for contribution by Houston against Beech on these warranties. Both parties are represented by the same counsel and have adopted similar positions as to all of Delhomme's claims against them.

buyer cannot assert a greater remedy when the limited remedy fails of its essential purpose than he would have had if there had been no limited remedy at all provided for. *Id.*

Accordingly, we find no reversible merit to Delhomme's second contention.

## III. *Incidental and Consequential Damages*

Delhomme lastly contends that the district court erred in finding that it was "not entitled to recover incidental damages in addition to breach of warranty damages." Delhomme seeks to recover these damages for the amounts it expended on insurance and finance charges prior to the date it resold the aircraft to Houston. Because we find the result reached by the district court to be without error, we reject this contention.[12]

Kansas UCC § 2–714, which provides the measure of damages for a breach of warranty claim, also permits the recovery of incidental and consequential damages. Kansas UCC § 2–714(3). The UCC provision providing for incidental and consequential damages reads as follows:

**UCC § 2–715. Buyer's Incidental and Consequential Damages.**

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

While the list of permissible categories of incidental damages in § 2–715(1) was not intended to be exhaustive, *see* Official Comment No. 1 to UCC § 2–715, damages sought under that provision must be a reasonable expense *"incident to* the delay or other breach." Kansas UCC § 2–715(1) (emphasis added). Similarly, under the provisions, any expenses awarded to a buyer as consequential damages must "proximately result" from the breach.

■ We cannot find that the items advanced by Delhomme as incidental or consequential damages, i.e., insurance on the aircraft and finance charges on the amount borrowed to purchase the aircraft, were either incident to or a proximate result of the breach of warranty by the seller. In accordance with general UCC principles, Kansas law requires that such damages must be the reasonably-contemplated "probable result" of the breach, or "arise from" the breach itself. *La Villa Fair v. Lewis Carpet Mills, Inc.,* 219 Kan. 395, 548 P.2d 825, 834 (1976); *Schatz Distributing Co., Inc. v. Olivetti Corporation of America,* 7 Kan.App.2d 676, 647 P.2d 820, 825 (1982). An expense will not ordinarily be considered as an item of incidental or consequential damage to a breach of warranty when the buyer would have incurred the

12. For the reasons to be stated in the text, we affirm the conclusion of the district court, albeit on different grounds than those stated by the district court in its order. "[I]t is firmly established that an appellate court must affirm the lower court's judgment if the result is correct even though it is based upon an improper ground." *Stegmaier v. Trammell,* 597 F.2d 1027, 1038 (5th Cir.1979).

The district court reasoned that any amount due to Delhomme in incidental damages would be offset by the seller's opposing claim for the value of Delhomme's use of the aircraft. In a

breach of warranty case like the present, however, the buyer retains title to the goods despite the breach and has the concomitant right to enjoy the value of the use of the goods. An offset for the value of the buyer's use is thus appropriately considered when the buyer rejects or revokes acceptance of the goods, *see e.g., Stroh v. American Recreation & Mobile Home Corporation, Inc.,* 35 Colo.App. 196, 530 P.2d 989, 993–94 (1975), for under those circumstances the goods, and the right to use them, are considered to be the property of the seller.

186

claimed expense even if the product or goods had been as warranted. 4 Anderson, Uniform Commercial Code, § 2–715:8 (3rd ed. 1983); *Tarter v. MonArk Boat Co.,* 430 F.Supp. 1290, 1295 (E.D.Mo.1977), *aff'd,* 574 F.2d 984 (8th Cir.1978).

In the present case, the insurance and finance payments made by Delhomme were incident to its desire to own, maintain, and use the aircraft, not the result of any breach of warranty by Houston. As such, these expenditures would have been made even if the aircraft performed as warranted, and are not proper items for recovery under Kansas UCC § 2–715(1) or (2). *See Michiana Mack, Inc. v. Allendale Rural Fire Protection District,* 428 N.E.2d 1367, 1372–74 (Ind.Ct.App.1981) (disallowing insurance and interest payments as § 2–715 damages under similar circumstances). "The payment of insurance premiums and interest did not result from [the seller's] breach." *Id.,* 428 N.E.2d at 1372. *But cf., Schatz Distributing Co., Inc. v. Olivetti Corporation of America, supra.*

*Conclusion*

For the reasons stated, the judgment of the district court is AFFIRMED.

AFFIRMED.